UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT HOSPITAL PARTNERS, L.P., d/b/a The George Washington University Hospital, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX M. AZAR II, Secretary, Department of Health and Human Services, <br><br> Defendant. | Civil No.:  19-cv-2344 (ESH) |

### MEMORANDUM OPINION

Plaintiffs District Hospital Partners, L.P., *et al.* (collectively, "Hospitals") bring this action against Secretary of Health and Human Services Alex M. Azar II (the "Secretary") in his official capacity, asking for, *inter alia*, (1) a declaration that "the Secretary's actions in setting the outlier thresholds for [Federal Fiscal Years] 2004-2006" were arbitrary and capricious, and (2) "an order by this Court setting aside the Secretary's outlier thresholds for FFYs 2004-2006 and remanding this action back to the Secretary" for recalculation of the thresholds and resulting amounts due to the Hospitals.  (*See* Compl. at 47-48, ECF No. 1.)  Before the Court is the Secretary's motion to dismiss claims related to Federal Fiscal Years ("FFYs") 2005 and 2006.[1]

---

[1] The parties settled claims relating to FFY 2004 on February 21, 2020 (*see* Joint Status Report, ECF No. 15), resulting in voluntary dismissal of certain parties from the case on March 2, 2020.  (*See* Notice of Voluntary Dismissal (dismissing "with prejudice . . . any claims concerning payments for Medicare outlier payments for inpatient services provided to patients with a date of discharge during federal fiscal year 2004"), ECF No. 16.)

(*See* Mem. in Support of Mot. to Dismiss, ECF No. 9-1 ("Mot. to Dismiss").)  For the reasons stated herein, the Court will grant the Secretary's motion.

## BACKGROUND

### I.     FACTUAL BACKGROUND[2]

#### A.     Medicare

"The Medicare program, established under title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395*lll*, provides federally funded medical insurance to elderly and disabled persons."  (Mot. to Dismiss at 2.)  Hospitals treating patients covered by the Medicare program "can obtain payment from the Medicare program for services provided to Medicare beneficiaries."  (*Id.*)

#### 1.     IPPS Program

The government reimburses hospitals for Medicare program services according to a system of fixed rates under the so-called Inpatient Prospective Payment System ("IPPS").  (*See id.*)  In other words, hospitals do not receive the *actual* cost of providing care to a given patient; instead, they are paid a fixed rate set by the IPPS according to the patient's primary diagnosis.  (*See id.*)  As a result, when treating any given patient, a hospital may be over- or under-compensated depending on the actual cost of treating a patient compared to the payment provided under the IPPS.

"[T]o lessen the financial blow that exceptionally costly cases might impose on

---

[2] An explanation of the workings of the relevant Medicare program has been detailed at some length in this Court's earlier opinions, *see District Hosp. Partners, L.P. v. Sebelius*, 973 F. Supp. 2d 1 (D.D.C. 2014) ("*District Hospital I*"), and *District Hosp. Partners, L.P. v. Azar*, 320 F. Supp. 3d 42 (D.D.C. 2018) ("*District Hospital II*"), as well as the opinion of the Court of Appeals, *see District Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015).  As a result, the Court's description of the program can be brief.

hospitals, Congress has provided for additional 'outlier' payments to partly offset extremely high costs in some rare cases." (*Id.* at 3.) To estimate how much it actually cost a hospital to treat a patient, the Secretary formulates what is called a "cost-to-charge ratio," "a fraction that represents the estimated amount that the hospital incurs in costs for every dollar that the hospital bills in charges." (*Id.*) The Secretary also sets a "fixed loss threshold," which "represents the dollar amount of loss that a hospital is expected to absorb on its own in any single case in which its costs exceed" the payment under the IPPS. (*See id.* at 4.) If, after applying the cost-to-charge ratio to a hospital's charges to find its estimated costs, the Secretary determines a hospital spent more than the sum of the fixed loss threshold and IPPS payment on a given case, the hospital is eligible for an outlier payment. (*See id.*) This outlier payment has generally been set at "80 percent of any difference between the hospital's estimated loss and the fixed loss threshold." (*Id.*)

Pursuant to the statute, outlier payments in total "may not be less than 5 percent nor more than 6 percent of the total payments projected or estimated to be made" under the IPPS. (*See id.* at 5 (quoting 42 U.S.C. § 1395ww(d)(5)(A)(iv)).) To keep outlier payments within the range specified by statute, the Secretary undertakes "a massive annual rulemaking that sets numerous Inpatient Prospective Payment System policies and rates for the coming fiscal year," as well as simulations estimating the amount of outlier payments under various fixed loss thresholds based on past charge data adjusted for inflation. (*See id.* at 6.) In recent years the Secretary has then set the fixed loss threshold so that projected total outlier payments would equal 5.1 percent of the projected total of payments. (*See id.*) However, the Secretary is not tasked with ensuring that outlier payments *actually* fall within the five to six percent range—the Court of Appeals has held that even if outlier payments fall outside of the five to six percent range in a given year, the

Secretary has no obligation to change the fixed loss ratio or otherwise change payments for the year retroactively. *See County of Los Angeles v. Shalala*, 192 F.3d 1005, 10017-18 (D.C. Cir. 1999).

### 2. Outlier Correction Rule

In 2003, the Secretary attempted to "refine the outlier payment system in response to abusive charging practices by some hospitals." (*See* Mot. to Dismiss at 8.) While the reimbursement process assumes that there is some logical connection between a hospital's charges and its actual costs, some hospitals had engaged in what was termed "turbocharging," "making it appear that they were incurring greater costs and were entitled to greater outlier payments." (*See id.* at 8-9.) The Secretary's notice of proposed rulemaking in 2003 listed 123 hospitals that appeared to have engaged in turbocharging. (*See id.* at 9.) "The adjusted charges at those 123 hospitals 'increased at a rate at or above the 95th percentile rate of charge increase for all hospitals . . . over the same period.'" *District Hosp. Partners L.P. v. Burwell*, 786 F.3d 46, 51 (D.C. Cir. 2015) (quoting 68 Fed. Reg. 10,420, 10,423 (Mar. 5, 2003)). The final rulemaking ultimately made several changes to the methodology for calculating cost-to-charge ratios to "ensure that the calculation of a hospital's cost-to-charge ratio each year would keep pace with recent changes in the proportional relationship between the hospital's charges and its costs." (Mot. to Dismiss at 10.)

### B. *District Hospital I* and *District Hospital II*

In January 2011, Hospitals brought their first case challenging the Secretary's fixed loss thresholds for FFY 2004 to 2006. (*See* Mot. to Dismiss at 10.) Plaintiffs' challenge focused on how the Secretary chose to account for the outlier correction rule when deciding how fixed loss thresholds would be calculated. While the changes discussed in the rulemaking need not be

described extensively,[3] one of plaintiffs' primary challenges was to the Secretary's choice when setting the FFY 2004 fixed loss threshold to correct for only 50 supposedly turbocharging hospitals, rather than the 123 noted in the proposed rulemaking for the outlier correction rule. *See District Hosp. Partners*, 786 F.3d at 52-53.

This Court granted summary judgment to the Secretary, concluding that "the Secretary acted reasonably when setting the fixed loss thresholds for FFYs 2004–2006." *District Hosp. Partners L.P. v. Sebelius*, 973 F. Supp. 2d 1, 23 (D.D.C. 2014) ("*District Hospital I*"). The Court of Appeals affirmed this Court's ruling in part and reversed it in part. While the Court of Appeals agreed with the Court's conclusions as to the rulemakings for FFY 2005 and 2006, *see District Hosp. Partners*, 786 F.3d at 62 (rejecting APA claims to the 2005 threshold and concluding that 2006 threshold was "plainly reasonable"), it ordered a remand to the Secretary to reconsider the FFY 2004 threshold. The Court of Appeals concluded that a remand was necessary so the Secretary could, *inter alia*, "explain why she corrected for only 50 turbo-charging hospitals in the 2004 rulemaking rather than for the 123 she had identified in the NPRM." *Id.* at 60. The panel also noted that if the Secretary "decides that it is appropriate to recalculate the 2004 outlier threshold, she should also decide what effect (if any) the recalculation has on the 2005 and 2006 outlier and fixed loss thresholds." *Id.*

"On January 22, 2016, HHS issued further explanation regarding its 2004 rulemaking in accordance with [the Court of Appeals'] directive." *District Hosp. Partners L.P. v. Azar*, 320 F. Supp. 3d 42, 44 (D.D.C. 2018) ("*District Hospital II*") (citing Explanation of FY 2004 Outlier Fixed-Loss Threshold as Required by Court Rulings, 81 Fed. Reg. 3,727). In explaining why the

---

[3] For more information on the rulemaking processes leading to the FFY 2004-2006 fixed loss thresholds, *see District Hosp. Partners*, 786 F.3d at 52-54.

FFY 2004 rule did not correct for the 123 turbocharging hospitals, the Secretary stated that they "simply did not have strong reason to believe that excluding the 123 hospitals from the charge inflation calculation, or from other parts of the fixed loss outlier threshold calculation, would improve our projections." *See* 81 Fed. Reg. at 3,729.  Ultimately, the Secretary declined to recalculate the FFY 2004 threshold and, therefore, declined to make changes to FFY 2005 or 2006. *See id.*  The Secretary also noted that "the fixed loss outlier thresholds are set based on new calculations each year without reference to the previous year's threshold[, and so] even if the FY 2004 threshold had been reset, there would be no reason to revisit the FY 2005 or FY 2006 calculation." *Id.*

In 2016, Plaintiffs brought suit once again to challenge the FFY 2004 to 2006 fixed loss thresholds in light of the Secretary's updated explanation.  *See District Hospital II*, 320 F. Supp. 3d at 44.  This Court dismissed plaintiffs' claims relating to FFY 2005 and 2006 after concluding that they were precluded by the 2011 case.  *See District Hosp. Partners, L.P. v. Burwell*, 2016 WL 6833929, at *4 (D.D.C. Nov. 18, 2016) ("The narrow and clear mandate of the Court of Appeals in the 2011 action forecloses plaintiffs' arguments that it should be allowed to challenge the 2005 and 2006 outlier determinations again.").  Later, the Court declined to revisit its dismissal of the FFY 2005 and 2006 claims but ordered a remand to the Secretary on the FFY 2004 claims in light of the Court of Appeals' decision in *Banner Health v. Price*, 867 F.3d 1323 (D.C. Cir. 2017), which addressed similar challenges to the Secretary's fixed loss thresholds in FFY 2004 to 2006, among other years.  The Court "remand[ed] to HHS for further explanation of the FFY 2004 determination consistent with Parts VI.B and VI.D of *Banner Health*, 867 F.3d at 1345–46, 1348–49." *District Hospital II*, 320 F. Supp. 3d at 47.  Although the parties filed cross-notices of appeal, the Secretary voluntarily dismissed his appeal and the Court of Appeals

dismissed plaintiffs' appeal, as a district court's remand order is not a final order for purposes of appeal. *See District Hosp. Partners, L.P. v. Azar*, 2019 WL 1467186, at *1 (D.C. Cir. Mar. 14, 2019) (citing *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 550 F.3d 16, 19 (D.C. Cir. 2008) ("It is black letter law that a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291." (internal citations omitted))).

## II.     PROCEDURAL HISTORY

On June 6, 2019, the Secretary released new guidance responding to court orders in *District Hospital II* and *Banner Health*. *See* Explanation of Federal Fiscal Year (FY) 2004, 2005, and 2006 Outlier Fixed-Loss Thresholds as Required by Court Rulings, 84 Fed. Reg. 26,360. Again, the Secretary declined to make any change to fixed loss thresholds for any of the years. *See, e.g., id.* at 26,363 ("Since we believe we acted appropriately and in accordance with statutory requirements, we are not recalculating the FY 2004 threshold."). The Secretary also reiterated its conclusion that, "in evaluating how to handle the 123 hospitals in estimating charge growth, we were faced with choices among various uncertain assumptions," and that it need not change its assumptions just because there were alternative options. *See id.* at 26,361.

In light of the Secretary's continued refusal to update the fixed loss thresholds for FFY 2004 to 2006, plaintiffs filed this action. (*See* Compl., ECF No. 1.) Plaintiffs allege that "the Secretary again fail[ed] to supply a reasoned explanation for the Secretary's methodology in setting the outlier threshold and calculating outlier payments for FFYs 2004, 2005, and 2006." (*Id.* ¶ 30.)

The Secretary moved to dismiss claims relating to FFY 2005 and 2006 on December 16, 2019, claiming that "[t]he Court's November 2016 ruling in *District Hospital Partners II* resolved the plaintiffs' fiscal year 2005 and 2006 claims, and the Court should not revisit that

7

ruling." (*See* Mot. to Dismiss at 15.) Claims relating to FFY 2004 were settled on February 21, 2020, and are not before the Court. (*See* Joint Status Report, ECF No. 15.)

## ANALYSIS

### I.   LEGAL STANDARD

#### A.   Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and brackets omitted).

However, if the facts alleged in the complaint taken as true fail to state a claim upon which relief could be granted, under Rule 12(b)(6) a court must dismiss the case. *See Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

#### B.   Preclusion

The doctrine of res judicata, which encompasses both claim preclusion and issue preclusion, "prevents repetitious litigation involving the same causes of action or the same issues." *See I.A.M. Nat'l Pension Fund, Ben. Plan A v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *District Hosp. Partners*, 2016 WL

6833929, at *3 (internal quotation marks and brackets omitted) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

"Under the claim preclusion aspect of res judicata, a final judgment on the merits in a prior suit involving the same parties or their privies bars subsequent suits based on the same cause of action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 946-47. "A subsequent lawsuit is barred by claim preclusion 'if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" *Natural Resources Defense Council v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)). "Claim preclusion precludes the relitigation of *claims*, not just *arguments*[, . . . and t]hus, the doctrine also prevents litigation of matters that *should have been* raised in an earlier suit." *District Hosp. Partners*, 2016 WL 6833929, at *3 (internal quotation marks and brackets omitted) (emphases in original).

"Under the issue preclusion aspect of res judicata, a final judgment on the merits in a prior suit precludes subsequent relitigation of issues actually litigated and determined in the prior suit, regardless of whether the subsequent suit is based on the same cause of action." *I.A.M. Nat'l Pension Fund*, 723 F.2d at 947. The requirements of issue preclusion are: (1) "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case must not work a basic unfairness to the party bound by the first determination," for example "when the losing party clearly lacked any incentive to litigate the point in the first trial,

but the stakes of the second trial are of a vastly greater magnitude." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

## II. APPLICATION

Defendants argue that "[t]he November 2016 ruling [*i.e.*, *District Hospital II*] fully resolved the plaintiffs' fiscal year 2005 and 2006 claims and remains operative with respect to those claims." (*See* Mot. to Dismiss at 16.) Plaintiffs respond that "[b]ecause the Secretary's 2019 Remand Explanation post-dates [*District Hospital II*], the present claim could not have been raised in any prior proceeding and the relevant issues were not submitted for judicial determination in [*District Hospital II*]." (*See* Pls.' Opp. at 14-15, ECF No. 11.) As a result, they argue that their claims relating to FFY 2005 and 2006 are not barred.

The Court concludes, as it did in *District Hospital II*, that plaintiffs' claims must be dismissed based on res judicata. While plaintiffs attempt to distinguish this case from *District Hospital II* (*see id.* at 14 ("The Secretary endeavors to portray this suit as a mere resuscitation of previously litigated claims but, in so doing, he ignores the Secretary's intervening determination that gave rise to the claims and issues in this case . . . .")), the two situations are essentially identical. In both 2016 and 2019, the Secretary made determinations that the FFY 2005 and 2006 fixed loss thresholds did not need to be changed. *See* 81 Fed. Reg. at 3,729 (declining to revisit FFY 2005 and 2006 fixed loss thresholds in 2016); *see also* 84 Fed. Reg. at 26,363 (same in 2019). In fact, plaintiffs describe their claims as "turn[ing] on the Secretary's arbitrary and capricious determination in his 2019 Remand Explanation that recalculation of FFY 2004 outlier payments was unnecessary, and his resulting improper failure to address the effects of such recalculation on FFYs 2005 and 2006 outlier and fixed loss thresholds" (Pls.' Opp. at 16-17)— replace "2019 Remand Explanation" with "2016 Remand Explanation" and the sentence could

10

have easily been a part of plaintiffs' briefing in *District Hospital II*. As a result, for the reasons set forth in *District Hospital II*, plaintiffs' claims are also barred.

First, "the doctrine of issue preclusion prevents this Court from revisiting any issues that were actually decided on the merits in the prior action." *District Hosp. Partners*, 2016 WL 6833929, at *4. In 2015, the Court of Appeals upheld the Court's determination that the Secretary had not acted unreasonably in setting the FFY 2005 and 2006 fixed loss thresholds. *See District Hosp. Partners*, 786 F.3d at 49 ("We affirm the district court's . . . rejection of the APA challenges to the 2005 and 2006 outlier thresholds."). That decision precludes any relitigation of the issues under the doctrine of issue preclusion. The Court will not interpret the Court of Appeals' statement that "if [the Secretary] decides that it is appropriate to recalculate the 2004 outlier threshold, she should also decide what effect (if any) the recalculation has on the 2005 and 2006 outlier and fixed loss thresholds," *id.* at 60, as an invitation to circumvent that doctrine. And regardless, the Secretary has stated that no change would need to be made to the FFY 2005 and 2006 thresholds regardless of what happened to the FFY 2004 threshold, given the independent calculations made from year to year. *See* 81 Fed. Reg. at 3,729.

Moreover, as was the case in *District Hospital II*, "[b]oth the parties and the subject matter in the 2011 lawsuit and the present lawsuit are identical, and the 2011 lawsuit was decided on the merits by a court of competent jurisdiction." *See District Hosp. Partners*, 2016 WL 6833929, at *4. The Court of Appeals has held that the "same nucleus of facts" test should be used to determine when a claim or cause of action is the same for purposes of claim preclusion. *See Univ. of Colorado Health v. Azar*, 2020 WL 1557134, at *7 (D.D.C. Mar. 31, 2020) (citing *NRDC v. EPA*, 513 F.3d at 261). In *NRDC v. EPA*, the plaintiffs challenged a rule promulgated by the EPA in 2007 regarding methyl bromide production and uses. *See* 513 F.3d

at 260. In 2004, they had challenged the EPA's decision to create a "framework rule" regarding the use and production of methyl bromide. *Id.* at 259. Citing the earlier litigation, the Court of Appeals concluded that plaintiffs' current claims were precluded by the doctrine of claim preclusion: "While NRDC challenges the 2007 exemption, its claim in fact remains the same: that the framework adopted in 2004—and used to calculate the 2007 exemption—is inconsistent with law." *Id.* at 260. Plaintiffs' actions here are essentially the same as the NRDC's. While they purport to challenge only the 2019 Remand Explanation, their challenge is really to the reasoning adopted by the Secretary in initially setting the FFY 2005 and 2006 fixed loss thresholds, and the subsequent refusal to change it. And, like the plaintiffs in *NRDC v. EPA*, Hospitals do not "get a second bite at that same apple." *Id.* at 261.[4]

As a result, plaintiffs cannot raise claims relating to the FFY 2005 and 2006 fixed loss thresholds because they are barred by the doctrines of claim and issue preclusion.

---

[4] To the extent that the Secretary's explanation in 2019 covered additional issues due to the remand order in *Banner Health*, "the doctrine of claim preclusion bars plaintiffs from raising any new claims or arguments that could have been raised in the prior action but were not." See *District Hosp. Partners*, 2016 WL 6833929, at *4. And, as the Court has previously held, "[t]he Court of Appeals' decision in *Banner Health* does not alter the analysis described by the Court regarding the effects of claim and issue preclusion on plaintiffs' claims." *District Hospital II*, 320 F. Supp. 3d at 45-46 (citing *Hardison v. Alexander*, 655 F.2d 1281, 1288–89 (D.C. Cir. 1981)). While the issues raised in *Banner Health* were new in the sense that plaintiffs had not previously raised them, they were *not* new in the sense that they could not have been made previously.

## CONCLUSION

For the foregoing reasons, the Court will grant the Secretary's motion to dismiss plaintiffs' FY 2005 and 2006 claims. A separate Order accompanies this Memorandum Opinion.

                                                                       /s/ Ellen S. Huvelle
                                                      ELLEN S. HUVELLE
                                                      United States District Judge

Date: May 14, 2020